UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **STEFANY SAMANTHA MORENO MADRID** | **CASE NO. 3:25-CV-01572 SEC P** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **BRIAN ACUNA ET AL** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## MEMORANDUM ORDER

Before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 [Doc. No. 1] ("Petition") filed by the habeas petitioner in this case, Stefany Samantha Moreno Madrid ("Petitioner"). Respondents, Brian Acuna, Kristi Noem, Pamela Bondi (collectively, "Respondents"), filed a response to the Petition [Doc. No. 11] and Petitioner replied [Doc. No. 15]. Petitioner filed a Request for Expedited Ruling on the Petition [Doc. No. 16].

For the following reasons, the Petition is **GRANTED IN PART**.

### I.    Background

The record before the Court indicates that Petitioner, a citizen of Honduras, fled Honduras to seek asylum and entered into the United States on July 8, 2021.[1] After crossing the United States border and walking for three hours, U.S. Customs Border Patrol arrested Petitioner and transported her to Fort Brown Patrol Station for further processing.[2] On July 11, 2021, the Department of Homeland Security ("DHS") initiated removal proceedings under 8 U.S.C. § 1229a by serving Petitioner

---

[1] [Doc. No. 1, p. 13 at ¶ 47].
[2] [Id. at ¶ 48].

with a Form I-862, Notice to Appear.[3] The Notice to Appear described Petitioner as "an alien present in the United States who has not been admitted or paroled" and additionally charged Petitioner with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i).[4] Later that day, Petitioner was released from DHS custody due to lack of space by an order of Release of Recognizance ("ROR").[5] Upon release, Petitioner was given four documents that listed her detention was governed by § 236 of the Immigration and Nationality Act ("INA"), which is codified under 8 U.S.C. § 1226.[6] After release from custody, Petitioner reunited with her mother and two minor children in Riverview, Florida.[7] On or about July 6, 2022, Petitioner filed an I-589, Application for Asylum and Withholding of Removal, with U.S. Citizenship and Immigration Services, which remains pending at the time of this ruling.[8]

On September 22, 2025, Florida Highway Patrol arrested Petitioner during a routine traffic stop after confirming Petitioner's alienage with Immigration Customs and Enforcement ("ICE").[9] Following her arrest, Petitioner was briefly detained at the Broward Transitional Center in Pompano Beach, Florida, before her transfer to Richwood Correctional Center in Richwood, Louisiana, where she remains to this day.[10]

---

[3] [Id. at ¶ 49].
[4] [Doc. No. 1-3, p. 1].
[5] [Doc. No. 1, p. 14 ¶51].
[6] [Doc. Nos. 1-5 (Order of Release on Recognizance); 1-7 (Notice of Custody Determination); 1-8 (Warrant for Arrest of Alien); 1-6, p. 3 (Record of Deportable/Inadmissible Alien)].
[7] [Doc. No. 52, p. 15 at ¶ 52].
[8] [Id.]; [Doc. No. 11-1, p. 1 at ¶ 5]; [Doc. No. 1, p. 13 at ¶ 47].
[9] [Doc. No. 1, p. 15 at ¶ 53]; [Doc. No. 11-1 p. 1 at ¶6].
[10] [Doc. No. 1-2, p. 1].

## II.   Law and Analysis

### A.   Writ of Habeas Corpus

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfield*, 542 U.S. 507, 525 (2004) (citing U.S. CONST. Art. I, § 9, cl. 2). Under § 2241, the writ is extended *inter alia* to persons "in custody in violation of the Constitution or laws or treaties of the United States." 8 U.S.C. § 2241(c)(3). The Supreme Court has interpreted § 2241 as granting district courts jurisdiction to hear habeas corpus challenges to the legality of the detention of aliens. *Rasul v. Bush*, 542 U.S. 466, 473 (2004). Here, Petitioner alleges that she is wrongfully being detained under § 235 of the INA instead of § 236, codified at 8 U.S.C. §§ 1225 and 1226 respectively.[11] Thus, this Court possesses habeas jurisdiction because Petitioner claims she is being detained "in violation of the … laws … of the United States." 8 U.S.C. § 2241(c)(3).

### B.   The INA's Jurisdiction-Stripping Provisions

As the Court has established general habeas jurisdiction over aliens, the Court now addresses Respondents' contention that this Court nonetheless lacks jurisdiction over Petitioner's claims because 8 U.S.C. §§ 1252(b)(9) and 1252(g) operate to strip this Court of jurisdiction.[12] Petitioner failed to respond to Respondents' jurisdictional arguments.[13] The Court turns to the text of 8 U.S.C. § 1252(b)(9) that prevents judicial review of all questions of law or fact arising from an alien's order of removal.

---

[11] *See* [Doc. No. 1, p. 3 at ¶5–7].
[12] [Doc. No. 11, pp. 36–40].
[13] *See generally* [Doc. No. 15].

8 U.S.C. § 1252(b)(9). However, the United States Supreme Court warned in *Jennings* that the language "arising from" should not be interpreted to "sweep in any claim that can technically be said to 'arise from'" the statute's provision as this expansive interpretation would lead to staggering results, such as depriving a detainee of any meaningful chance for judicial review of a claim for prolonged detention during removal proceedings. *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018) (plurality opinion). The *Jennings* court found it was not barred by § 1252(b)(9) as "respondents [were] not asking for review of an order of removal; they [were] not challenging the decision to detain them in the first place or to seek removal; and they [were] not even challenging any part of the process by which their removability will be determined." *Id.* at 294.

The United States Supreme Court has clarified that § 1252(g) relates to "three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). However, the statute is not all-encompassing, and courts may review decisions or actions that are a part of the deportation process but fall outside of the statute's purview. *See Id.* at 482. Specifically, the statute "does not bar courts from reviewing an alien detention order, because such an order, while intimately related to efforts to deport, is not itself a decision to execute removal orders." *Cardoso v. Reno*, 216 F.3d 512, 516 (5th Cir. 2000) (citation modified). Therefore, courts must determine whether the requested

relief sought falls within the ambit of § 1252(b)(9) or § 1252(g) and is outside the scope of judicial review.

The Court finds that it has jurisdiction over Petitioner's claims. The question of whether Petitioner's detention is governed by § 1225(b)(2)(A) or § 1226(a) falls outside the purview of 8 U.S.C. §§ 1252(b)(9) and 1252(g) because there is no removal order, and Petitioner is not seeking a jurisdictional review of an order of removal, challenging the decision to detain her or to initiate removal proceedings, or contesting how removability will be determined.[14] *See* 8 U.S.C. §§ 1252(b)(9), 1252(g).

### C. Classification Under 8 U.S.C. §§ 1225 and 1226

Petitioner's primary argument centers on her detention under 8 U.S.C. § 1225(b)(2), which mandates detention during the pendency of removal proceedings and does not allow for the possibility of a bond hearing, instead of 8 U.S.C. § 1226, under which a detainee may be eligible for a bond hearing.[15] Section 1225 applies to "applicants for admission," defined as noncitizens who are either "present in the

---

[14] Respondents also argue that Petitioner should be required to exhaust available administrative remedies before this Court considers her habeas petition. [Doc. No. 11, pp. 32–33]. Petitioner asserts that administrative exhaustion would be futile as the Immigration Judge will hold that Petitioner is ineligible for bond pursuant to *Matter of Yajure Hurtado*. [Doc. No. 15, p. 9].

An exception to exhaustion exists "where the attempt to exhaust such remedies would itself be a patently futile course of action." *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (per curiam) (internal quotation marks omitted). In the Board of Immigration Appeals' ("BIA") precedential decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), the BIA held that anyone deemed inadmissible under § 1182(a)(6)(A)(i) will be subject to mandatory detention without bond pursuant to § 1225(b)(2). Here, Petitioner was charged with removability under § 212(a)(6)(A)(i) of the INA, which is codified at 8 U.S.C. § 1182(a)(6)(A)(i). [Doc. No. 1-3]. Because *Hurtado* was designated as a precedential decision, it will "serve as precedent[] in all proceedings involving the same issue or issues" upon BIA review. 8 C.F.R. § 1003.1(g)(2). Thus, an IJ would hold that Petitioner is not eligible for a bond hearing because she is detained under § 1225(b)(2). Accordingly, the Court finds that the exhaustion requirement is waived here because Petitioner's appeal to the BIA concerning her eligibility for a bond hearing or mandatory detention would be "futile" considering Hurtado. *See Fuller*, 11 F.3d at 62.

[15] *See generally* [Doc. No. 1].

United States" without having been admitted or who are arriving in the United States. 8 U.S.C. § 1225(a)(1). Applicants for admission are divided into two categories: those covered by § 1225(b)(1) and those covered by § 1225(b)(2). Relevant here is § 1225(b)(2), which establishes a mandatory detention regime for "an alien who is an applicant for admission, if the examining immigration officer determines that [the] alien seeking admission is not clearly and beyond a doubt entitled to be admitted" for the duration of removal proceedings. 8 U.S.C. § 1225(b)(2)(A). *See Jennings*, 583 U.S. at 297 (plurality opinion) (holding §§ 1225(b)(1) and 1225(b)(2) do not provide authority for bond hearings).

In contrast, § 1226 provides additional direction for the apprehension and detention of aliens "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Section 1226(a) gives immigration authorities power to issue an administrative warrant and either "continue to detain the arrested alien" or release the alien from detention on bond or conditional parole. 8 U.S.C. § 1226(a)(1)–(2). However, § 1226(a) does not grant "any *right* to release on bond." *Matter of D-J-*, 23 I.&N. Dec. 575 (A.G. 2003) (citing *Carlson v. Landon*, 342 U.S. 524, 534 (1952)). The statute provides that the bond or parole may be revoked at any time, and that the alien may be rearrested and detained under the original warrant. 8 U.S.C. § 1226(b).

On July 8, 2025, the DHS issued new guidance to all ICE employees to ensure immediate and consistent application of the immigrant detention authority under 8 U.S.C. § 1225. *ICE Memo: Interim Guidance Regarding Detention Authority for*

*Applicants for Admission,* AM. IMMIGR. LAWYERS ASS'N (July 8, 2025), https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission. The DHS instructed all ICE employees to treat anyone inadmissible under § 1182(a)(6)(A)(i) as subject to detention under 8 U.S.C. § 1225(b)(2)(A), and therefore ineligible to be released on bond. *Id.* The Board of Immigration Appeals ("BIA") applied the DHS' guidance in *Matter of Yajure Hurtado*, holding any person who entered into the United States without admission or inspection, even if they have been residing in the United States for years without lawful status, is an applicant for admission and subject to detention under 8 U.S.C. § 1225(b)(2)(A). 29 I. & N. Dec. 216, 220 (BIA 2025).

Delving further into statutory interpretation, the BIA discussed the effect of an alien detained with and without a warrant explaining "aliens detained without a warrant while arriving in the United States are mandatorily detained under [8 U.S.C. § 1225]." *Id.* at 227. By contrast, aliens detained with a warrant are not automatically place under [8 U.S.C. § 1226(a)], instead "aliens detained under [8 U.S.C. § 1226(a)] *may* be eligible for discretionary release on bond." *Matter of Hurtado* at *227 (emphasis added). While the BIA's decision is not binding on this Court, courts may give an administrative agency's judgment respect based on "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). The Court recognizes the BIA's subject matter expertise on immigration matters and is persuaded by the holding in *Matter of Yajure Hurtado*. Moreover, the BIA's holding in *Matter of Yajure Hurtado* has since been

favorably applied in this Court. *See Sandoval v. Acuna*, No. 25-CV-1467, 2025 WL 3048926, at *5–6 (W.D. La. Oct. 31, 2025); *see also Topal v. Bondi*, No. 25-CV-1612, 2025 WL 3486894, at *2 (W.D. La. Dec. 3, 2025).

In the proceedings decided by this Court following the *Hurtado* decision, this Court has yet to decide a case where petitioner alleges or provides proof that the Attorney General issued a warrant for their arrest for their detention to fall under § 1226(a). Respondents cited this Court's ruling in *Barrios Sandoval v. Acuna* in their supplement authority,[16] however, this case can easily be distinguished from the case at hand because the petitioner in *Sandoval* "[did] not allege that the Attorney general issued a warrant for her arrest... further indicating that [p]etitioner [was] properly detained under § 1225(b)." No. 25-CV-01467, 2025 WL 3048926 (W.D. La. Oct. 31, 2025). *See also Oliveira v. Patterson*, No. 25-CV-01463, 2025 WL 3095972, at *5 (W.D. La. Nov. 4, 2025) (Petitioner's failure to allege his arrest was pursuant to a warrant issued by the Attorney General further indicates "[p]etitioner was properly detained under § 1225(b) as an "applicant for admission," not § 1226(a).").

Support for Petitioner's detention classification under § 1226(a) is found in Respondent's cited authority of the United States District Court of Nebraska's holding in *Vargas Lopez v. Trump*.[17] No. 8:25-CV-00526, 2025 WL 2780351 (D. Neb. Sept. 30, 2025). In *Vargas Lopez*, the court noted that "one express requirement to fall within [8 U.S.C.] § 1226(a)—and a critical one here—is that the alien was arrested on a warrant issued by the Attorney General." *Id.* at *6. In that case,

---

[16] [Doc. No. 12, p. 2].
[17] [Doc. No. 11, p. 26]

Page **8** of **12**

petitioner argued his detention under §1225(b)(2) was unlawful because he was detained under §1226. *Id.* at *4. However, petitioner did not allege that he was arrested pursuant to a warrant issued by the Attorney General nor submitted any warrant to the record, the "critical" express requirement for the detention to fall within §1226(a). *Id.* at *7. As the petitioner bears the burden of demonstrating by a preponderance of the evidence that his detention is unlawful, the *Vargas Lopez* court emphasized the petitioner's failure to produce his arrest warrant was "fatal" to petitioner's argument his detention falls under § 1226(a). *Id.*

In contrast to the petitioners in *Sandoval*, *Oliveira*, and *Vargas Lopez*, the Petitioner in this case has provided proof of arrest warrant[18] and Respondents do not contest the warrant's authenticity. As Petitioner has satisfied the "one express requirement" for her detention to fall within 8 U.S.C. § 1226(a), the Court finds that 8 U.S.C. § 1226 should apply instead.

### D. Petitioner's Detention Under § 1226(a) Adheres to Respondents' Administrative Record

Petitioner argues Respondents cannot assert Petitioner's detention falls under § 1225(b) when the Respondent's own records issued to the Petitioner consistently cited Petitioner's detention was governed under § 1226.[19] The United States District Court for the District of Maine held in *Chang Barrios v. Shepley* that the federal respondents could not contradict their own detention documents that consistently classified petitioner under § 1226(a). No. 25-CV-00406, 2025 WL 2772579, *7 (D. Me.

---

[18] [Doc. No. 1-8].
[19] [Doc. No. 1, p. 12 ¶ 46]; *See* [Doc. Nos. 1-5 (Order of Release on Recognizance); 1-7 (Notice of Custody Determination); 1-8 (Warrant for Arrest of Alien); 1-6, p. 3 (Record of Deportable/Inadmissible Alien)].

Sep. 29, 2025). In *Chang Barrios*, the petitioner's arrest warrant, the NTA, and the notice of custody determination classified Barrios as "subject to detention on a discretionary basis under § 1226(a)." *Id.* at *6. Only after Barrios went into ICE custody did federal respondents attempt to reclassify petitioner's detention under § 1225, without explaining the authority they relied on to change the basis of his detention. *Id.* at *7. The *Chang Barrios* court ordered petitioner's detention should be governed by the statute he was originally charged with, because "an agency must defend its actions based on the reasons it gave when it acted" and may not rely on a post-hoc rationalization such as reclassification under § 1225. *Id.* (quoting *Cf. Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 22 (2020)).

Similarly, in *Paula Andrea Salcedo Aceros v. Polly Kaiser*, the court rejected the government respondents' attempt to reclassify an alien's detention under § 1225(b) instead of § 1226. No. 25-CV-06924, 2025 WL 2637503, *8 (N.D. Cal. Sept. 12, 2025). In *Salcedo Aceros*, the petitioner crossed the border without inspection and was later arrested by border patrol officers. *Id.* at *4. The petitioner was charged as removable under Section 212(a)(6)(A)(i), but "released on her own recognizance with a Notice to Appear 'due to lack of bed space.'" *Id.* Border patrol stated on petitioner's ROR that she was released under §1226. *Id.* However, upon petitioner's rearrest, the Government respondents' asserted petitioner's detention fell under §1225(b). *Id.* at *7. The *Salcedo Aceros* court found the Government could not simply "switch tracks" to detain the petitioner under §1225(b) when "the detention authority consistently

applied by the government to [petitioner] since her arrival in the United States has always been §1226." *Id.* at *8.

Petitioner's argument heavily relies on "Respondents' own administrative record, where, by their own admission, deemed Petitioner detained under § 1226(a)."[20] Similar to *Chang Barrios*, Petitioner's warrant for arrest[21] and Notice of Custody Determination[22] both classify her detention under § 1226. Similar to petitioner in *Salcedo Aceros*, Petitioner's ROR explicitly states she was released in accordance with 8 U.S.C. § 1226.[23] While 8 U.S.C. § 1226(b) provides that an alien's bond or parole may be revoked at any time, and that the alien may be rearrested and detained under the original warrant, Respondents fail to explain why Petitioner's detention after her rearrest was reclassified under § 1225(b) and not under the original warrant's detention authority under 8 U.S.C. § 1226(a).[24] Moreover, Respondents have not provided any authority for why they should be allowed to "switch tracks" to detain Petitioner under § 1225(b) and thus ignore the detention authority consistently applied to Petitioner. *Id.* at *8. Accordingly, the Court concludes that Petitioner's detention is proper under § 1226. The Court notes, however, that it continues to follow Matter of Yajure Hurtado. The distinction in this case is that Petitioner was initially arrested pursuant to a § 1226 warrant, and the administrative record here supports detention under that provision.

---

[20] [Doc. No. 15, p. 2].
[21] [Doc. No. 1-8].
[22] [Doc. No. 1-7].
[23] [Doc. No. 1-5].
[24] [Doc. No. 1-8].

### III. Conclusion

**IT IS ORDERED** that Petitioner's Petition for Habeas Corpus [Doc. No. 1] is **GRANTED IN PART**.

**IT IS FURTHER ORDERED** that the Petition for Writ of Habeas Corpus is **GRANTED** insofar as it relates to Petitioner's detention under 8 U.S.C § 1226(a).

**IT IS FURTHER ORDERED** that the government officials are to reclassify Petitioner's detention under 8 U.S.C. § 1226(a) and provide Petitioner with a bond hearing.

MONROE, LOUISIANA, this 12th day of December 2025.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE